UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CAROLINE GUZMAN,

    Plaintiff,

v.    Case No. 15-CV-0215

BROWN COUNTY,

    Defendant.

## DECISION AND ORDER

Plaintiff Caroline Guzman filed this action against her former employer, Defendant Brown County, alleging that the County interfered with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, discriminated against her on the basis of her disability (sleep apnea) in violation of the Americans with Disabilities Act (ADA, 42 U.S.C. § 12112 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and retaliated against her for protected activity in violation of both the FMLA and the ADA. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. The case is now before the Court on Defendant's motion for summary judgment. ECF No. 18. For the reasons that follow, Defendant's motion for summary judgment will be granted and this case will be dismissed.

## BACKGROUND

Brown County employed Guzman as a Telecommunication Operator in the 911 Call Center from May 28, 2002 to March 15, 2013. The Call Center, located in the Brown County Public Safety Communications Department, operates all day, every day, dispatching for all police, fire, and rescue agencies in Brown County. During her tenure with Brown County, Guzman accumulated a long

history of verbal and written warnings. In May 2011 Guzman was warned for failing to report to an assigned shift. Guzman received a verbal warning in September 2011 for failing to report to work on time due to oversleeping. On March 24, 2012, Guzman was issued a performance report for failing to report to work on time due to oversleeping. In August 2012 Guzman received a performance report for failing to report to work on time on July 26, 2012. On December 3, 2012, Guzman received a performance report for failing to report to work on time on December 2, 2012. On February 25, 2013, Guzman was suspended for 3 days for failing to report to work on time on February 9, 2013. Guzman was also told that if she was late again she could be fired. Guzman's 3 day suspension was to be served on three non-consecutive days: March 4, March 11, and March 12, 2013.

On March 8, 2013, Guzman was late for work. Guzman claimed that early in the morning of that day she was awake and lay down on her couch while her husband went to take a shower. She said she fell asleep and her husband also fell asleep until both were awakened when the County placed a telephone call to their house. That same day David Panure, Guzman's supervisor, contacted Cullen Peltier, the Director of Public Safety, to inform him that Guzman had come to work late again. Peltier decided that day to terminate Guzman's employment.

After her shift ended on March 8, 2013, Guzman contacted her psychiatrist, Dr. Stamm, to obtain a note to excuse her tardiness that day. Guzman hoped that the note would help her not to get fired. The note from Dr. Stamm stated: "The above patient most probably has sleep apnea. Please excuse her tardiness due to over sleeping. She needs to be re-tested and treated for that condition." Guzman Dep. Ex. 7 at 42, ECF No. 31-11. Guzman worked March 9 and 10, served suspension on March 11 and 12 and was off on March 13 and 14, 2013.

2

Guzman returned to work on March 15, 2013. On that day a meeting was held between Panure, Peltier, Thomas Smith (a Human Resources Analyst/Safety Coordinator for Brown County), and Guzman. Smith read Guzman a Report of Disciplinary Action Taken that had been prepared following Guzman's tardiness on March 8. Smith also explained the termination decision to her. That morning Guzman presented Dr. Stamm's note to Smith. The parties dispute whether Guzman actually made a request for FMLA leave on March 15, 2013.

## ANALYSIS

**A. Summary Judgment Standard**

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party

3

seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322–24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits—demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up

4

moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotes omitted).

**B. FMLA Interference Claim**

Guzman's first allegation is that Defendant interfered with her rights under the FLMA. The FMLA mandates that employers must "allow employees to take up to twelve weeks of unpaid leave for serious health conditions during any twelve-month period." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014). Pursuant to 29 U.S.C. § 2615(a)(1) it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." "'To prevail on an FMLA interference claim, an employee must . . . establish that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'" *Taylor-Novotny*, 772 F.3d at 498 (quoting *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008)). Employers may be put on "constructive notice" of an employee's need for FMLA leave by either an "employee's inability to communicate his illness to his employer or clear abnormalities in the employee's behavior." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 726 (7th Cir. 2007). A clear abnormality may be manifested through a "sudden" or "dramatic" change, such as an employee who collapses or breaks an arm in front of their employer. *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003).

There is no dispute that at the time of her termination, Guzman had neither sought nor applied for FMLA benefits for her tardiness. Normally, such a lack of notice would pose a barrier to Guzman's interference claim. *See Taylor-Novotny*, 772 F.3d at 498 (discussing the need to make

a request under the FMLA). In order to overcome this barrier, Guzman argues that the county had constructive notice of her need for FMLA benefits. *See Stevenson*, 505 F.3d at 726 (finding that an FMLA case could go forward based on "constructive notice" of the need for leave). Specifically, Guzman contends that her tardiness in the middle of a three day suspension period cannot be reconciled with her otherwise high-quality job performance. Pl.'s Br. In Opp. 7, ECF No. 33. According to her, "[i]t just doesn't add up." *Id.*

Guzman's tardiness on March 8, 2013, could not have provided "constructive notice" for the purposes of existing case law and the FMLA. The Seventh Circuit cases cited by Guzman involve "dramatic" and "sudden" changes in demeanor which could have clued an employer on to the need for FMLA benefits. For example, *Stevenson* involved an employee "with a previously unblemished record for safety concerns" who spontaneously engaged in "[l]engthy encounters of yelling and swearing at" her superior. 505 F.3d at 727. Given those facts the court reasoned "that a trier of fact could find that her behavior was so bizarre that it amounted to constructive notice of the need for leave." *Id.* Similarly, in *Byrne* a "model employee" hid in the carpenter's shop and slept or read on the job for several days, culminating in his termination. 328 F.3d at 380. The employee argued, and the court ultimately agreed, that summary judgment was improper because his conduct—coupled with his sister's statement that he was "very sick" and news of his hospitalization—raised a dispute of material fact about whether his employer was on notice of his condition and the need for FMLA leave. *Id.* at 381.

In contrast, Guzman's failure to come to work on time on March 8, 2013 was consistent with her record at Brown County, which included numerous warnings for tardiness and other issues. Setting aside the numerous earlier absences and late arrivals, Guzman's suspension itself was a

6

product of her being late on a previous day. She cannot now claim that it was "dramatic" change for her to be late only a few days after she was suspended for being late. Even for an "exemplary" employee who had never been late or missed a day in a lengthy career, a single tardiness could not be understood to be "dramatic." A late arrival to work (standing alone) is not akin to " yelling and swearing" at a supervisor or sleeping for lengthy periods during the work day. *See Stevenson*, 505 F.3d at 727; *Byrne*, 328 F.3d at 380. Furthermore, Guzman arriving late for work was not a "sudden" change, because missing work had become somewhat of a pattern for Guzman over the preceding years. Though Guzman received some commendations for the quality of her work, those awards were for high-quality performance—not timeliness. *See* ECF No. 31-16, 31-17, 31-21.

Additionally, even accepting all of Guzman's arguments on this point, Brown County could still not have been on notice of a "need" for FMLA benefits, because no such need existed. Guzman argues that she needed FMLA benefits in order to get rechecked for sleep apnea. But she never asked for FMLA leave for that purpose. Indeed, even as late as January 2016, Guzman had not been retested for sleep apnea. Moreover, while sleep apnea may prevent a person from getting a good nights sleep, it does not prevent a person from showing up on time for work. To this day, Guzman has offered no statement from a medical doctor or any other health care professional that her tardiness was due to sleep apnea or any other medical condition. All she has ever produced is a note she requested over the phone from a psychiatrist who had never diagnosed or treated her for sleep apnea suggesting that she get retested. And even that was not provided to the County until after the decision to terminate her for excessive tardiness had been made.

Guzman compares her situation to the facts presented in *Coleman v. Illinois Dep't of Human Servs.*, 2013 WL 5348314, at *18 (N.D. Ill. Sept. 24, 2013). Guzman's argument is undeveloped,

7

amounting to a few quotes from *Coleman* followed by extensive quotes from Guzman's deposition transcript and a conclusion. Guzman does not explain her reasoning or *Coleman*'s connection to this case. As best the Court can determine, *Coleman* has no bearing on this case. In *Coleman* the plaintiff delayed filing her FMLA paperwork due to (ultimately false) assurances from her employer that her FMLA requests would be backdated. *Id.* No such assurances were made here.

For all these reasons, Guzman has failed to offer sufficient evidence to show that Brown County had constructive notice of her need for FMLA leave and her FMLA interference claim must be dismissed.

**C. FMLA Retaliation Claim**

Guzman alleges that Brown County retaliated against her for exercising her rights under the FMLA by: 1) disciplining Guzman following her use of FMLA leave years before her termination; 2) terminating her in response to Guzman's March 2013 FMLA notice; and 3) sending a SWAT team to help repossess her furniture after her termination. Pl.'s Br. in Opp. 16, ECF No. 33. "To make out a prima facie retaliation case, an employee can proceed using either a direct or indirect method of proof." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (citing *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir.2012)). Whether evidence is labeled as "direct" or "indirect" does not alter how the evidence is evaluated—the evidence must be considered as a whole to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enter., Inc.*, 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016).

8

**1. Direct Method**

In order to establish an FMLA retaliation claim using the direct method, Guzman must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Lagenbach*, 761 F.3d at 799. Guzman first argues that the County terminated her in response to her March 2013 FMLA request.

Guzman's argument necessarily fails because she is unable to show a causal connection between her termination and any FMLA request. Brown County made the decision to terminate Guzman's employment on March 8, 2013. Guzman requested FMLA leave on March 15, 2013. Since Guzman's FMLA request came after the decision to terminate Guzman, Guzman's request cannot be the cause of the decision to terminate. Therefore, Guzman cannot make a prima facie retaliation case on the direct method based on her termination.

Guzman also claims that Brown County "continued to retaliate against her by sending its SWAT team to help repossess her furniture—an unprecedented use of the Sheriff's Department in any case but Plaintiff's." Pl.'s Br. in Opp. 16, ECF No. 33. Brown County submitted the following uncontested facts: Lebakkens Inc. of Wisconsin d/b/a Lebakkens Rent to Own filed an action to repossess furniture which Guzman had previously purchased. Warrant, ECF No. 23-9. The Court Commissioner signed the warrant authorizing the Brown County Sheriff's Department to use all reasonable and necessary force to enter the residence of Guzman in order to return possession of the items. *Id.*

Guzman makes no argument and offers no evidence in support of her claim that the County retaliated against her by sending the Sheriff Department's "SWAT team" to reposes her items. Guzman does not explain why this action constituted an adverse action or even what kind of force

9

was used. I find that this second FMLA retaliation claim is meritless. The Sheriff, not the County's Call Center, determines the manner in which its officers act to recover property the state courts order repossessed.

**2. Indirect Method**

In order to create a presumption of discrimination by establishing a *prima facie* case of discrimination under the indirect method, an employee must demonstrate that: "(1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662–63 (7th Cir. 2006)). Guzman has failed to demonstrate that she met Brown County's expectations or that she was treated less favorably than similarly situated employees.

With regard to meeting Brown County's expectations, "[t]he critical issue is whether she was performing well in her job at the time of her termination." *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993). On February 25, 2013, Guzman was told that if she was late again she could be fired. On March 8, 2013 Guzman was late for work. The record is replete with warnings and reprimands that Guzman had received both before and after taking FMLA leave years earlier for an unrelated purpose. Guzman also received some commendations and awards. But these do not change the fact that the many reprimands clearly indicate that Guzman was not performing adequately at the time of her termination.

Guzman has also failed to demonstrate that there were any similarly situated employees who were treated more favorably than her. "A similarly situated employee need not be 'identical,' but

10

the plaintiff must show that the other employee 'dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him].'" *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)); *see Crawford v. Ind. Harbor Belt RR. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). In attempting to show that such employees existed, Guzman created a document titled "Brown County Public Safety Employees who I witnessed being late to work and were not disciplined or terminated for their tardiness." ECF No. 31-11 at 36. This document contains the names and contact information of a number of Brown County employees along with summary explanations of times they have avoided being written up for tardiness.

Guzman's document fails to provide enough detail to allow one to determine whether these employees are similarly situated to Guzman. Many of the narrative summaries fail to state who the supervisor was and all of the summaries lack sufficient context. For example, the document makes no mention of standards or mitigating circumstances. None of the employees' warning and reprimand histories are included—a consideration which can be a critical in deciding whether a reprimand is appropriate. *See Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008) ("Employers are justified in reprimanding employees more severely for repeated errors."). In contrast, Guzman's reprimand history is lengthy and uncontested. As such, Guzman has failed to show that any of the listed employees are similarly situated to her.

Finally, Guzman has failed to set forth sufficient evidence to make a showing of pretext. Brown County had a valid reason for terminating Guzman—repeated tardiness—and Guzman has offered no evidence beyond speculation to show that this justification was a lie or not the real reason

11

for her termination. More importantly, Guzman can't show that the real reason Brown County terminated her was because of a request for FMLA benefits, because there was no FMLA request (or constructive notice, as discussed above) until after the termination decision had been made. Therefore, Defendant's request for summary judgment on Guzman's FMLA retaliation claim must be granted.

**D. ADA Claim**

    **1. Qualified Individual**

The ADA prohibits discrimination on the basis of disability against "qualified individual[s]." 42 U.S.C. § 12112(a). As such, in order to claim the protection of the ADA, an employee must be disabled and "qualified." *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1058 (7th Cir. 1998). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As explained by the Seventh Circuit in *Duda*:

> The regulations present two prongs to the definition of "qualified individual." First, the disabled individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires." 29 C.F.R. § 1630.2(m). Second, he "can perform the essential functions of such position" with or without accommodation. *Id.*

133 F.3d at 1058. The determination about whether an individual is qualified "should be based on the qualified disabled individual's capabilities at the time of the employment decision." *Id.* at 1059.

Guzman argues that she was a qualified individual because "[a]ttendance was not an essential function of Plaintiff's job." Pl.'s Br. in Opp. 19, ECF No. 33. Guzman's argument is meritless. The Telecommunication Operator position involves being at a station answering

12

emergency calls and dispatching critical services to the Brown County community. Without her attendance, the calls do not get answered, the emergency services do not get dispatched, and the job does not get done. Guzman's attendance is absolutely required at work, or else someone else has to perform her job for her.

Nevertheless, Guzman makes four arguments in support of the proposition that attendance was not an essential function of her job. First, she argues that attendance is not listed as an essential job function. The fact that attendance is not expressly listed as a job requirement, however, does not mean it is not essential. Though "attendance" itself is not listed as an essential duty of the position, each (or at least most) of the essential duties do require attendance at work. Position Description 1, ECF No. 22-1; *see Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489–90 (7th Cir. 2014) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)) ("[A]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance. A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes."). Furthermore, "[t]he ADA provides that consideration shall be given to the employer's judgment as to what functions of a job are essential.'" *Id*. at 490 (quoting 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)).

Second, Guzman argues that attendance is not essential because county employees are given time off in the form of "casual time." But the exhibits cited by Guzman do not support this argument. *See* ECF No. 31-1–31-4, 31-20, 31-22. Rather, casual time appears to be a limited form of leave that (alone) does not excuse absences and tardiness. *See id.* Moreover, getting time off is not the same as failing to show up when scheduled. Third, Guzman contends that attendance was

13

not essential because Brown County did not always require employees to stay over to cover another employee's absence or tardiness. Yet all this argument could prove is that sometimes Brown County is able to operate with fewer than the scheduled number of employees. That Brown County did not inflexibly require another employee to fill in for Guzman each time she was late does not mean that she was not required to be there in order for her job to be done. Also, implicit in Guzman's argument is that there were times when her attendance was required. Fourth, Guzman argues that other employees were late and absent without being punished. But, as discussed above, the circumstances of those employee's absences is not sufficiently developed in the record to find that theses other employees are similarly situated to Guzman. Further, it does not follow that just because those employees were not punished, their attendance was not essential to the performance of their work. It may very well be that those employees were given leniency or excused for some other reason despite not performing an essential function of their job on a single occasion.

Having failed to establish that she is a qualified individual for the purposes of the ADA, Guzman's ADA claim necessarily fails and Defendant's request for summary judgment on Guzman's ADA claim will be granted.

**2. Reasonable Accommodation**

Guzman also claims that Brown County failed to accommodate her as required under the ADA. Under the ADA, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" is a form of discrimination against a qualified individual unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of [their] business." 42 U.S.C. § 12112(b)(5)(A). "To establish a prima facie case for failure to accommodate, 'a plaintiff

14

must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability.'" *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (quoting *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). "[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).

Even assuming Guzman was a qualified individual, there can be no failure to accommodate in this case. Guzman argues that, although she never requested an accommodation, Brown County was aware of her sleep apnea beginning in 2006 and was, therefore, on notice that she had a disability which needed accommodating. *See Rednour v. Wayne Twp.*, 51 F. Supp. 3d 799, 827 (S.D. Ind. 2014) (citing *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014)) ("[T]he key inquiry is whether the employer was placed on notice that the employee had a disability that needed accommodating, not necessarily whether that notice came about from an explicit accommodation request from the employee."). Guzman specifically argues that Brown County should have accommodated her by allowing her "time . . . to get her sleep apnea rechecked and tested." Pl.'s Br. in Opp. 23, ECF No. 33. But "time" is not an accommodation. Accommodations are meant to assist qualified individuals in performing the functions of a position, they are not excuses for past misconduct. *See Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) ("Under the ADA, an employer must make reasonable accommodations to enable a disabled employee to perform his job duties. . . . 'A second chance' . . . is not an accommodation."). It also is unclear what Guzman even means by "time" or why an accommodation would be necessary for

15

her to be seen by a doctor. Such vague allegations will not suffice to sustain a claim of failure to accommodate.

Lastly, Guzman has not offered any evidence suggesting that Brown County was aware of her limitation at the time of her termination. Although Guzman contends that Brown County's earlier knowledge of her illness can be imputed on Defendant in 2013, the record shows that Guzman's symptoms had been resolved years earlier. Although she began using a CPAP machine in February/March 2006, she stopped using the machine some four years earlier after she had gastric bypass surgery in August 2008. Pl.'s Resp. To DPFOF ¶ 24, Guzman Dep. 31–32, ECF No. 23-1. In fact, to this day Guzman has no medical opinion showing that her current difficulties are being caused by sleep apnea. *Id.* at 34. The earliest Brown County could have been on notice of Guzman's condition and limitations would have been the day she was fired—after the decision to terminate her had been made.

As such, Guzman has failed to show a genuine dispute of material fact about whether Brown County failed to accommodate her in violation of the ADA.

**E. ADA Retaliation Claim**

The ADA prohibits employers from retaliating against an employee because of a disability. 42 U.S.C. § 12203(a). As with ADA discrimination, ADA retaliation may be shown through the direct or indirect method. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). "To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Id*. (citing *Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009)). In contrast, a showing under the indirect method requires the plaintiff to

16

demonstrate that she "(1) engaged in protected activity; (2) was performing [her] job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Id.* at 601–602 (citing *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009)).

Guzman's ADA retaliation claim fails for the same reasons as her FMLA retaliation claim, discussed above. Guzman can not make a causal connection between statutorily protected activity and her termination because any protected activity took place after the decision to terminate her had been made. *See Dickerson*, 657 F.3d at 601. Thus Guzman fails under the direct method. Guzman also cannot show that she performed her job satisfactorily or that there were similarly situated employees who were treated differently. *Id.* at 601–602. So her claim also fails under the indirect method. Therefore, Guzman has failed to raise a genuine issue of material fact on her ADA retaliation claim and it must also be dismissed.

**F. Rehabilitation Act Claim**

Finally, Guzman did not respond to or even address Defendant's argument for summary judgment on the issue of Guzman's Rehabilitation Act claim. Even if she had, however, her Rehabilitation Act Claim would have failed. The Rehabilitation Act provides in part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Therefore, to succeed in her Rehabilitation Act claim, Guzman must show that she was not fired for any reason other than her disability. *Id.* Furthermore, "[a]side from the from the 'solely by reason of' standard of causation . . . the Rehabilitation Act incorporates the standards

17

applicable to Title I of the ADA." *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). As discussed above, Guzman's ADA claim fails because she cannot show causation. Being unable to show that her disability was the cause of her termination, Guzman certainly can't meet the more stringent level of proof that she was fired "solely by reason of her disability." Therefore, Guzman's Rehabilitation Act Claim will be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Brown County's motion for summary judgment (ECF No. 18) is **GRANTED** and this action is **DISMISSED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   31st   day of August, 2016.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach, Chief Judge
                                                  United States District Judge